SUPERIOR COURT OF WASHINGTON
IN AND FOR FRANKLIN COUNTY

WASHINGTON TRUST BANK, a
Washington banking corporation,

       Plaintiff,

  v.

EASTERDAY RANCHES, INC., a
Washington corporation; EASTERDAY
FARMS, a Washington general partnership;
CODY EASTERDAY, individually; DEBBY
EASTERDAY, individually; KAREN
EASTERDAY, individually and in her capacity
as personal representative of the Estate of Gale
Easterday,

       Defendants.

NO. 21-2-50049-11

DECLARATION OF CLAIRE BAKER IN
SUPPORT OF PLAINTIFF'S MOTION
FOR ORDER OF DEFAULT AND
DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT

I, CLAIRE BAKER, hereby make the following declaration:

  1.   I am over the age of 18 years, not a party hereto, and I am competent to testify as to the matters set forth herein. I make this Declaration of my own personal knowledge and belief.

DECLARATION OF CLAIRE BAKER IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER OF DEFAULT
AND DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT: 1

3/19/21

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

2.  I am the Vice-President and Special Assets Team Lead at Washington Trust Bank and I am familiar with this matter having been assigned to lead the collection and work out of the Easterday relationship.

3.  Attached hereto as **Exhibit A** is a true and correct copy of the Loan Agreement executed by Easterday Ranches, Inc. and by Easterday Farm's general partners.

4.  Attached hereto as **Exhibit B** is a true and correct copy of the Promissory Note executed by Easterday Ranches, Inc. and by Easterday Farm's general partners.

5.  Washington Trust Bank is the holder of the original Promissory Note and is the owner of the original Promissory Note.

6.  Attached hereto as **Exhibits C, D, and E** are a true and correct copies of the Commercial Guaranties executed by Cody Easterday, Debby Easterday and Karen Easterday respectively.

7.  The Promissory Note specifies that the death or incompetency of a guarantor or general partner of a borrower is an event of default under the note. I am aware that on December 10, 2021, Gale Easterday was killed in an automobile accident and that he was both a guarantor of the Promissory Note and a general partner of Easterday Farms.

8.  I am aware that in late January 2021, Tyson Foods filed a lawsuit against co-borrower Easterday Ranches, Inc. alleging fraud by the company. Tyson alleged that this fraud was carried out by Cody Easterday. The Promissory Note provides for additional events of default, which include borrower's false statements, borrower's defaults in favor of third parties

DECLARATION OF CLAIRE BAKER IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER OF DEFAULT
AND DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT: 2

3/19/21

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

and borrower's insolvency. Each of these events of defaults have occurred in relationship to this Promissory Note.

9. Based on the evolving events of default, Washington Trust Bank caused a Notice of Default to be sent to the guarantors and borrowers on January 26, 2021. Attached hereto as **Exhibit F** is a true and correct copy of the Notice of Default.

10. To date, the guarantors have not cured the defaults, nor made any attempt to repay the loan.

11. The bank received notice that Easterday Ranches, Inc. filed for Chapter 11 bankruptcy on February 1, 2021.

12. The bank received notice that Easterday Farms filed for Chapter 11 bankruptcy on February 8, 2021.

13. In preparation of this declaration, I generated a report from the bank's system to determine amounts due on the Promissory Note. The original amount of the loan was $45,000,000.00. The principal balance still outstanding on the loan as of March 17, 2021 was $44,442,507.69. In addition, there was accrued and unpaid interest of $208,728.52.

14. The Promissory Note and Guaranties allow the bank to hire legal counsel to assist in enforcing any provisions of the Promissory Note or a Guaranty. The bank retained to law firm of Lukins & Annis to assist in enforcing the obligations of the borrowers and the guarantors and has incurred and will incur fees and costs as a result of the default and subsequent breaches.

DECLARATION OF CLAIRE BAKER IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER OF DEFAULT
AND DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT: 3

3/19/21

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

1        I hereby declare under penalty of perjury under the laws of the State of Washington that

2  the foregoing is true and correct to the best of my knowledge and belief.

3        DATED this _19th_ day of March, 2021.

4

5

6

7                               CLAIRE M. BAKER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF CLAIRE BAKER IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER OF DEFAULT
AND DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT: 4

3/26/21

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA  99201
Telephone: (509) 455-9555
Fax:  (509) 747-2323

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _2nd_ day of March 2021, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to all counsel of record as follows:

| | | |
|---|---|---|
| Sussman Shank, LLP<br>Jeffrey C. Misley<br>Thomas Stilley<br>Laurie Hager<br>1000 SW Broadway, Suite 1400<br>Portland, OR 97205<br><br>*Attorneys for Cody and Debby Easterday* | ☒<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (FAX)<br>Via email |
| Peter Richter<br>Peter Richter:<br>200 South Wacker Drive, 31st Floor<br>Chicago, IL 60606<br>prichter@paladinmgmt.com | ☒<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (FAX)<br>Via email |
| R. Crane Bergdahl<br>6119 Burden Blvd., Suite A<br>Pasco, WA 99301<br>P.O. Box 2755<br>Pasco, WA 99302<br>cranelaw@msn.com<br><br>*Attorney for Karen Easterday* | ☒<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (FAX)<br>Via email |
| CHS Capital, LLC dba CHSC NM<br>5500 Cenex Dr.<br>Inver Grove Heights, MN 550077 | ☒<br>☐<br>☐<br>☐<br>☐ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (FAX)<br>Via email |

DECLARATION OF CLAIRE BAKER IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER OF DEFAULT
AND DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT: 5

3/19/21

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

| | | |
|---|---|---|
| U.S. Small Business Administration<br>1545 Hawkins Blvd, Suite 202<br>El Paso, TX 79925 | ☒<br>☐<br>☐<br>☐<br>☐ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (FAX)<br>Via email |
| Thomas Buford 3rd<br>Bush Kornfeld, LLP<br>601 Union St., Ste 5000<br>Seattle, WA 98101<br>tbuford@bskd.com<br><br>*Attorney for Easterday Ranch & Easterday Farms, Inc.* | ☒<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (FAX)<br>Via email |

SHEANA LOOMIS, Legal Assistant

DECLARATION OF CLAIRE BAKER IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER OF DEFAULT
AND DEFAULT JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT: 6

3/19/21

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

# EXHIBIT A



September 3, 2020

## LOAN AGREEMENT

Easterday Farms
Easterday Ranches, Inc.
5235 Industrial Way
Pasco, WA 99301

Cody, Debby, Gale and Karen:

Washington Trust Bank ("Bank") is pleased to provide credit accommodations for Easterday Farms ("Borrower") subject to the following terms and conditions:

| | |
|---|---|
| Borrower: | Easterday Farms |
| Co-Borrower: | Easterday Ranches, Inc. |
| Guarantor(s): | Cody & Debby Easterday |
| | Gale & Karen Easterday |

### Credit Facility:

**Amount and Type of Loan:** $45,000,000.00 Revolving Line of Credit

**Loan Purpose:** Line of credit to fund Easterday Farms operations

**Loan Fee:** $56,250.00 (.125% of loan amount)

**Interest Rate:** The interest rate shall be a variable of WTB Index minus .50%, adjusted on the day of change with a floor of 3.75%.

All interest shall be computed on the basis of a 360-day year, applied to the actual number of days elapsed.

**Prepayment Penalty:** No Penalty

**Maturity Date:** June 30, 2022

**Repayment Terms:** Interest monthly, principal due upon collection of crop proceeds.

**Collateral:** All goods, inventory, equipment, farm equipment, fixtures, accounts, deposit accounts, chattel paper, documents, general intangibles, instruments, investment property and letter of credit rights

**Conditions Precedent:** 1st position UCC filing on collateral outlined above, with the exception of equipment, farm equipment and fixtures, which allow for PMSI and prior filings.

Tri-City Region Corporate Banking   3250 West Clearwater   Kennewick, Washington  99336
Phone (509) 734-4746  Toll Free (877) 706-7070   Fax (509) 734-4560
watrust.com

www.watrust.com

| | |
|---|---|
| **Advances:** | Each advance is contingent upon compliance with all terms and conditions in this letter agreement, and any promissory note, security agreement, mortgage, trust deed or other document executed in connection with the loan. No advances on the line will be made after 6/30/22. |
| **Production Activities:** | Without consent of Bank, Borrower will not make any changes to Borrower's production activities as described in the operating budget, including but not limited to changes in (a) number of acres in production; (b) types of crops; (c) individual or aggregated budgeted expenses. |
| **Financial Information and Records:** | Borrower will keep adequate books and records maintained in accordance with generally accepted accounting principles, consistently applied, or such other account standards as are acceptable to Bank. |

**Loan Covenants:**

1. Borrower financial performance in compliance with operating budget, attached hereto as "Exhibit A".
2. Borrower, Co-borrower and related entities shall maintain minimum Global Working Capital[1] of $45,000,000.00, measured upon analysis of the 10/31 financial position.
3. 50% Starting Crop Margin Position[2] of Borrower and Co-borrower, measured upon analysis of the 10/31 financial position.
4. Borrower, Co-borrower and related entities shall maintain a minimum annual Debt Service Coverage Ratio[3] of 1.25x, measured upon analysis of the annual 10/31 financials.
5. Borrower, Co-borrower and related entities shall maintain a Funded Debt/EBITDA[4] of no greater than 5.00x, measured

---

[1] Global Working Capital is defined as—the dollar amount by which "Current Assets" exceed "Current Liabilities"
- "Current Assets" are defined as all assets of Borrower, Co-borrower, and related entities, which may be properly classified as current assets as determined in accordance with GAAP. However, in determining Current Assets, Bank will diverge from GAAP by including the dairy cattle herd, at lower of net book value or fair market value, as a Current Asset to offset the accounting impact of the dairy herd financing as a current liability.
- "Current Liabilities" are defined as all liabilities of Borrower, Co-borrower, and related entities, which may be properly classified as current liabilities as determined in accordance with GAAP.
[2] Starting Crop Margin Position is defined as—the dollar amount by which the consolidated (Easterday Farms Partnership and Easterday Ranches, Inc.) "Current Assets" exceed "Current Liabilities" then divided by the total cash disbursements of Easterday Farms, Partnership, as contained within the Borrower submitted and Bank approved budget for the upcoming crop year
- "Current Assets" are defined as all assets of Borrower, which may be properly classified as current assets as determined in accordance with GAAP.
- "Current Liabilities" are defined as all liabilities of Borrower, which may be properly classified as current liabilities excluding current portion of long-term debt and/or leases as determined in accordance with GAAP.
[3] Debt Service Coverage Ratio is defined as: [EBITDA (earnings before interest, income taxes, depreciation, and amortization) less unfunded capital expenditures (fixed asset purchases not funded by a long-term funding source and/or sale of fixed assets), less cash income taxes, and cash dividends]/ (divided by current portion of long term debt (prior period) + interest expense).
[4] Funded Debt/EBITDA is defined as: Funded Debt (non-related debt that matures in more than one year, excluding proposed $45,000,000 revolving line of credit) / [EBITDA (earnings before interest, income taxes, depreciation, and amortization) less

Tri-City Region Commercial Banking    3250 West Clearwater Ave    Kennewick, WA 99336
Phone (509) 734-4746    Toll Free (877) 706-7070    Fax (509) 734-4560
watrust.com

upon analysis of the 10/31 financial position. This measurement shall be evaluated and adjusted upon the implementation of FASB *ASU 2016-02 Leases*.

6. Any variance of $500,000 or more from the borrower and bank approved capitalization budget (referenced in a table as Exhibit B) of Easterday Dairy, LLC will require prior bank approval. In addition, any future intercompany loans or transfers of funds outside of the initial approved capitalization budget of Easterday Dairy, LLC will also require prior bank approval.

7. Borrower and Co-borrower shall provide annual combined CPA Review Financial Statement for fiscal year ending 10/31/20 within 150 days of FYE.

8. Starting the FYE 10/31/21, Borrower and Co-borrower shall provide annual combined CPA Audited Financial Statement within 150 days of FYE.

9. Borrower, Co-borrower and related entities (listed below) shall provide internally prepared quarterly financial statement (balance sheet, income statement and statement of cash flows) within 45 days of prior quarter-end:
   a. Easterday Farms Produce Co.
   b. 3E Properties, LLC
   c. EPO, LLC
   d. Easterday Farms Dairy, LLC

10. Borrower shall provide quarterly variance reports compared to annual cash budget within 45 days of prior quarter-end.

11. Borrower and Co-borrower shall provide annual CPA prepared Tax Returns, all schedules, within 30 days of filing, but no later than 10/15 annually.

12. Borrower shall provide annual farm budget and borrowing plan with capital expenditures for upcoming crop year, within 60 days of fiscal year end.

13. Related entities (listed above) shall provide CPA Reviewed Financial Statements within 150 days of their respective Fiscal Year-Ends.

14. Guarantors shall provide annual self-prepared, market value personal financial statement within 60 days of fiscal year-end and CPA prepared Tax Returns, all schedules, within 30 days of filing but no later than 10/15 annually.

15. Borrower shall provide other financial data and reports as may be requested by Bank from time-to-time.

16. Borrower shall not convey, lease, sell or otherwise transfer or dispose of any assets, except in the ordinary course of business.

17. All of Borrower and Co-Borrower's deposit accounts to be maintained at WTB.

---

unfunded capital expenditures (fixed asset purchases not funded by a long-term funding source and/or sale of fixed assets), less cash income taxes, and cash dividends]

Tri-City Region Commercial Banking    3250 West Clearwater Ave    Kennewick, WA 99336
Phone (509) 734-4746    Toll Free (877) 706-7070    Fax (509) 734-4560
watrust.com

18. Borrower agrees to execution of credit agreements and other documents: including resolutions, mortgages, security agreements and other documents deemed necessary.

**Governing Law:**    State of Washington

**Default:**    The occurrence of any of the following shall constitute an event of default under this loan agreement and under each note, security document and any other document or instrument executed by borrower in connection with indebtedness or obligations of Borrower to Bank:

A.    Any default under, or any failure of any party thereto to pay or perform any requirement, obligation, covenant or liability set for in this loan agreement, on any note, security document, or any other instrument or document executed in connection with indebtedness or obligations of Borrower to Bank.

B.    Any guaranty executed in connection with the loan ceases to be in full force and effect.

C.    Bank, in its sole discretion, determines that there has been a material adverse change in the financial condition or management of borrower.

**Remedies:**    Time is of the essence of this agreement. Upon the occurrence of an event of default and at any time thereafter, Bank shall have all the rights and remedies available under each document, in addition to any and all remedies otherwise available at law, including but not limited to the right to terminate the availability of advances and declare the entire outstanding balance of principal and interest of the loan(s) immediately due and payable.

This commitment is effective only upon our receipt of all properly executed documents and fulfillment of any "pre-disbursement terms and conditions", if any, specified above.

This credit accommodation is based, in part, upon financial statements and other representations presented by you as required by the Bank. Any obligation to disburse funds initially is contingent upon the satisfactory financial performance of Easterday Farms and Easterday Ranches, Inc., as solely determined by the Bank. This commitment may be withdrawn if, between acceptance and initial disbursement, there should be any material, adverse change in the financial condition of Easterday Farms, or Easterday Ranches, Inc., or any guarantor or if there should be any default or condition which, left unresolved, would lead to a default under any loan documents with any creditor. You hereby agree to notify Washington Trust Bank of any such material adverse changes, default, or pending condition of default prior to disbursement of any funds.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON STATE LAW.**

This commitment contains the entire agreement between us. No waiver or modification of any provision hereof shall be effective unless in writing and then only in the specific instance and for the specific purpose stated. We thank you for the opportunity to finance your operations, and look forward to continuing a long and mutually beneficial relationship. Please sign acceptance and acknowledgement below.

Sincerely,

W. Benjamin Cox
Vice President

## ACCEPTANCE:

This Loan Agreement is ACCEPTED this _3_ day of _September_ ~~AUGUST~~, 2020.

### BORROWER:

By: _____
   Cody Easterday, General Partner of Easterday Farms

By: _____
   Debby Easterday, General Partner of Easterday Farms

By: _____
   Gale Easterday, General Partner of Easterday Farms

By: _____
   Karen Easterday, General Partner of Easterday Farms

Tri-City Region Commercial Banking   3250 West Clearwater Ave   Kennewick, WA 99336
Phone (509) 734-4746   Toll Free (877) 706-7070   Fax (509) 734-4560
watrust.com

**CO-BORROWER:**

By: _____

     Cody Easterday, President, Easterday Ranches, Inc.

**GUARANTORS:**

By: _____
Cody Easterday, Individual

By: _____
Debby Easterday, Individual

By: _____
Gale Easterday, Individual

By: _____
Karen Easterday, Individual

Tri-City Region Commercial Banking   3250 West Clearwater Ave   Kennewick, WA 99336
Phone (509) 734-4746   Toll Free (877) 706-7070   Fax (509) 734-4560
watrust.com

**EXHIBIT B**

*0955*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $45,000,000.00 | 09-03-2020 | 06-30-2022 | 750140279 | | 12 | EAA6216 | 1488 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

Borrower: EASTERDAY FARMS
EASTERDAY RANCHES, INC.
5235 INDUSTRIAL WAY
PASCO, WA 99301

Lender: WASHINGTON TRUST BANK
Kennewick Financial Center
3250 West Clearwater
Kennewick, WA 99336
(800) 788-4578

Principal Amount: $45,000,000.00                                      Date of Note: August 25, 2020

**PROMISE TO PAY.** EASTERDAY FARMS; and EASTERDAY RANCHES, INC. ("Borrower") jointly and severally promise to pay to WASHINGTON TRUST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-five Million & 00/100 Dollars ($45,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 30, 2022. In addition, Borrower will pay regular monthly payments of all accrued interest due as of each payment date, beginning September 30, 2020, with all subsequent interest payments to be due on the last day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest as shown on the most recent statement or bill provided to Borrower (if no statement or bill has been provided for any reason, it shall be applied to the unpaid interest accrued since the last payment); and then to principal.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the WASHINGTON TRUST BANK INDEX RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each SAME DATE OF CHANGE IN THE INDEX. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.500 percentage points under the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 3.750% per annum based on a year of 360 days. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this Note be less than 3.750% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender consistent with the following payment instructions: Only checks or money orders should be sent by mail and all payments must be accompanied by the account number or payment stub. Lender may modify these payment instructions by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 5:00 P.M. Pacific Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: WASHINGTON TRUST BANK, Loan Service Center, P.O. BOX 2127 SPOKANE, WA 99210-2127.

**LATE CHARGE.** If a payment is 30 days or more late, Borrower will be charged 10.000% of the unpaid portion of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 4.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default In Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if

21-80010-WLH     Doc 1-37     Filed 04/12/21     Entered 04/12/21 17:17:03     Pg 15 of 34

there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change in Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**MAXIMUM LATE CHARGE.** Borrower acknowledges that the late charge provided in this Note shall be due on interim payments, on maturity and on acceleration of the balance due on this Note. Notwithstanding anything to the contrary in the LATE CHARGES provision in this Note, under no circumstances shall any late charge due on interim payment, at maturity or on acceleration exceed the sum of $999.99. Borrower acknowledges that the late charge provided in this Note represents the reasonable estimate by Lender and Borrower of a fair average compensation due to the failure of Borrower to make timely payments. Such late charge shall be paid without prejudice to the rights of the Lender to collect any other amounts provided to be paid or to declare a default under this Note or under the Related Documents.

**JUDGMENT.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than one hundred thousand dollars ($100,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered, shall be deemed an Event of Default hereunder and under the Related Documents.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Washington.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Benton County, State of Washington.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Security Agreement dated September 3, 2020 covering substantially all business assets granted by Easterday Farms; a Security Agreement dated September 3, 2020 covering substantially all business assets granted by Easterday Ranches, Inc.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: CODY EASTERDAY; DEBBY EASTERDAY; GALE EASTERDAY; KAREN EASTERDAY; and/or CODY EASTERDAY. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**AFFIRMATIVE COVENANTS.** Borrower covenants and warrants that as long as this Note or any Related Documents remain in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings, or similar actions affecting Borrower or any Guarantor which do or could exceed one hundred thousand dollars ($100,000.00).

**Financial Records.** Maintain its books and records in accordance with accepted accounting principles, in form and substance satisfactory to Lender, applied on a consistent basis. Permit Lender to examine, audit, and copy such books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following: (1) As soon as available, but in no event later than one-hundred- fifty (150) days after the end of each fiscal year or within the required time period specified in any loan agreement between Borrower and Lender, Borrower's financial statement for the year ended, in form and substance satisfactory to Lender, and (2) such additional financial or other information, statements, and certifications, in form and substance satisfactory to Lender, as Lender may require or request.

**SURVIVAL OF REPRESENTATIONS AND WARRANTIES.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Note or in any certificate or other instrument delivered by Borrower to Lender under this Note or any Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of any Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Note or any Related Documents shall be terminated, whichever is the last to occur.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Note unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Note shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Note. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Guarantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under the Note, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of

Lender.

**NOTICE OF FINAL AGREEMENT. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER STATE LAW.**

**COUNTERPARTS.** This Agreement may be executed in multiple counterparts, each of which, when so executed, shall be deemed an original but all such counterparts, taken together, shall constitute one and the same Agreement.

**NON-LIABILITY OF LENDER.** The relationship between Borrower and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Borrower. Borrower is exercising Borrower's own judgment with respect to Borrower's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Borrower of any matter with respect to Borrower's business. Lender and Borrower intend that Lender may reasonably rely on all information supplied by Borrower to Lender, together with all representations and warranties given by Borrower to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**AUTOMATIC EXTENSION.** Provided the Note is not in default and at the sole discretion of the Lender, the Borrower may be granted the right to extend the maturity of this note for up to two (2) calendar months.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: WASHINGTON TRUST BANK Loan Service Center P.O. BOX 2127 SPOKANE, WA 99210-2127.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party, partner, or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

EASTERDAY FARMS

By: _____
CODY EASTERDAY, General Partner of
EASTERDAY FARMS

By: _____
GALE EASTERDAY, General Partner of
EASTERDAY FARMS

By: _____
DEBBY EASTERDAY, General Partner of
EASTERDAY FARMS

By: _____
KAREN EASTERDAY, General Partner of
EASTERDAY FARMS

EASTERDAY RANCHES, INC.

By: _____
CODY EASTERDAY, President of EASTERDAY
RANCHES, INC.

LaserPro, Ver. 20.2.0.043  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - WA  c:\CFI\WIN\CFI\LPL\D20.FC  TR-21377  PR-38 (M)

# EXHIBIT C

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $45,000,000.00 | 09-03-2020 | 06-30-2022 | 750140279 | 12 | EAA6216 | 1488 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** EASTERDAY FARMS
EASTERDAY RANCHES, INC.
5235 INDUSTRIAL WAY
PASCO, WA 99301

**Lender:** WASHINGTON TRUST BANK
Kennewick Financial Center
3250 West Clearwater
Kennewick, WA 99336
(800) 788-4578

**Guarantor:** CODY EASTERDAY
830 BELLFLOWER RD
MESA, WA 99343-9564

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, or any one or more of them, and any present or future judgments against Borrower, or any one or more of them, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether; voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender borrow against Guarantor's assets for an amount greater than twelve million dollars ($12,000,000.00); ; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Guarantor, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most

recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) no Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Benton County, State of Washington.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Subject to applicable law, and except for notice required or allowed by law to be given in another manner, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this

21-80010-WLH    Doc 1-37    Filed 04/12/21    Entered 04/12/21 17:17:03    Pg 21 of 34

Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Subject to applicable law, and except for notice required or allowed by law to be given in another manner, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

SURVIVAL OF REPRESENTATIONS AND WARRANTIES. Guarantor understands and agrees that in extending Loan Advances to Borrower, Lender is relying on all representations, warranties, and covenants made by Guarantor in this Guaranty or in any certificate or other instrument delivered by Guarantor or Borrower to Lender under this Guaranty or any Related Documents. Guarantor further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of any Related Documents, shall be continuing in nature, shall be deemed made and executed by Guarantor at the time each Loan Advance is made, and shall remain in full force and effect until such time as Guarantor's or Borrower's Indebtedness as defined in this Guaranty shall be paid in full, or until this Guaranty or any Related Documents shall be terminated, whichever is the last to occur.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means EASTERDAY FARMS; and EASTERDAY RANCHES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation CODY EASTERDAY, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means WASHINGTON TRUST BANK, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory note or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED September 3, 2020.

GUARANTOR:

X _____
CODY EASTERDAY

LaserPro, Ver. 20.2.0.043  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - WA  c:\CFI\WIN\CFI\LPL\PL\E25.FC  TR-215371  PR-50 (M)

**EXHIBIT D**

*"0220"*

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $45,000,000.00 | 09-03-2020 | 06-30-2022 | 750140279 | 12 | EAA6216 | 1488 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** EASTERDAY FARMS
EASTERDAY RANCHES, INC.
5235 INDUSTRIAL WAY
PASCO, WA 99301

**Lender:** WASHINGTON TRUST BANK
Kennewick Financial Center
3250 West Clearwater
Kennewick, WA 99336
(800) 788-4578

**Guarantor:** DEBBY EASTERDAY
830 BELLFLOWER RD
MESA, WA 99343-9564

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, or any one or more of them, and any present or future judgments against Borrower, or any one or more of them, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets for an amount greater than twelve million dollars ($12,000,000.00); (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most

recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Benton County, State of Washington.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Subject to applicable law, and except for notice required or allowed by law to be given in another manner, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this

Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Subject to applicable law, and except for notice required or allowed by law to be given in another manner, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

SURVIVAL OF REPRESENTATIONS AND WARRANTIES. Guarantor understands and agrees that in extending Loan Advances to Borrower, Lender is relying on all representations, warranties, and covenants made by Guarantor in this Guaranty or in any certificate or other instrument delivered by Guarantor or Borrower to Lender under this Guaranty or any Related Documents. Guarantor further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of any Related Documents, shall be continuing in nature, shall be deemed made and redated by Guarantor at the time each Loan Advance is made, and shall remain in full force and effect until such time as Guarantor's or Borrower's Indebtedness as defined in this Guaranty shall be paid in full, or until this Guaranty or any Related Documents shall be terminated, whichever is the last to occur.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means EASTERDAY FARMS; and EASTERDAY RANCHES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation DEBBY EASTERDAY, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means WASHINGTON TRUST BANK, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED September 3, 2020.

GUARANTOR:

X _____
DEBBY EASTERDAY

LaserPro, Ver. 20.2.0.043  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - WA  E:\CFI\WINCFI\LPL\E25.FC  TR-215371  PR-30 (M)

**EXHIBIT E**

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $45,000,000.00 | 09-03-2020 | 06-3O-2022 | 750140220 | 12 | EAA6216 | 1488 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** EASTERDAY FARMS
EASTERDAY RANCHES, INC.
5235 INDUSTRIAL WAY
PASCO, WA 99301

**Lender:** WASHINGTON TRUST BANK
Kennewick Financial Center
3250 West Clearwater
Kennewick, WA 99336
(800) 788-4578

**Guarantor:** KAREN EASTERDAY
631 BELLFLOWER RD
MESA, WA 99343-9564

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, or any one or more of them, and any present or future judgments against Borrower, or any one or more of them, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender borrow against Guarantor's assets for an amount greater than twelve million dollars ($12,000,000.00); ; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most

recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment to the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any note or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Benton County, State of Washington.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Subject to applicable law, and except for notice required or allowed by law to be given in another manner, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this

Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Subject to applicable law, and except for notice required or allowed by law to be given in another manner, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

SURVIVAL OF REPRESENTATIONS AND WARRANTIES. Guarantor understands and agrees that in extending Loan Advances to Borrower, Lender is relying on all representations, warranties, and covenants made by Guarantor in this Guaranty or in any certificate or other instrument delivered by Guarantor or Borrower to Lender under this Guaranty or any Related Documents. Guarantor further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of any Related Documents, shall be continuing in nature, shall be deemed made and redated by Guarantor at the time each Loan Advance is made, and shall remain in full force and effect until such time as Guarantor's or Borrower's Indebtedness as defined in this Guaranty shall be paid in full, or until this Guaranty or any Related Documents shall be terminated, whichever is the last to occur.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means EASTERDAY FARMS; and EASTERDAY RANCHES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation KAREN EASTERDAY, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means WASHINGTON TRUST BANK, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER, AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED September 3, 2020.

GUARANTOR:

X _____
KAREN EASTERDAY

LaserPro, Ver. 20.2.0.048  Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved.  - WA  e\CFI\MA\CFILPL\E20.FC  TR-218271  PR-30 (M)

# EXHIBIT F

| LUKINS & ANNIS | ATTORNEYS

717 W Sprague Ave, Ste 1600
Spokane, WA 99201-0466
t 509-455-9555
f 509-747-2323    lukins.com

TREVOR R. PINCOCK
tpincock@lukins.com

January 26, 2021
*VIA U.S. MAIL*
*VIA CERTIFIED MAIL*

Easterday Ranches, Inc.
5235 Industrial Way
Pasco, WA 99301
cody@easterdayfarms.com

Debby Easterday
830 Bellflower Road
Mesa, WA 99343-9564
debby@easterdayfarms.com

Easterday Farms
5235 Industrial Way
Pasco, WA 99301
cody@easterdayfarms.com

Karen Easterday
631 Bellflower Road
Mesa, WA 99343-9564

Cody Easterday
830 Bellflower Road
Mesa, WA 99343-9564
cody@easterdayfarms.com

The Estate of Gale Easterday
Karen Easterday, Personal Representative
631 Bellflower Road
Mesa, WA 99343-9564

Re:    Washington Trust Bank Loan No. -0279
       Notice of Default

Mr. Easterday and Mss. Easterday:

Lukins & Annis, P.S. represents Washington Trust Bank ("WTB").

On or about August 25, 2020, Easterday Ranches, Inc. and Easterday Farms, a general partnership, executed a Promissory Note in favor of WTB evidencing a line of credit in the amount of $45,000,000.00, and secured the line of credit by executing Agricultural Security Agreements ("Loan -0279"). Cody Easterday, Debby Easterday, Gale Easterday, and Karen Easterday each executed a Commercial Guaranty by which they absolutely and unconditionally guaranteed Loan -0279.

This letter serves as notice that Easterday Ranches, Inc. and Easterday Farms are in default on Loan -0279. The death of Gale Easterday and the lawsuit that Tyson Fresh Meats Inc. filed in Franklin County Superior Court against Easterday Ranches Inc. are events that constitute default under the terms of Loan -0279. The death of Mr. Easterday constitutes an event affecting a guarantor, an event affecting a general partner, and a change in ownership; and Tyson's lawsuit constitutes a material adverse change in financial condition and as a result of

02001063

A Professional Services Corporation    Spokane | Coeur d'Alene | Moses Lake | Seattle

the lawsuit WTB believes the prospect of payment or performance of the Promissory Note is impaired and believes itself insecure.

As a result of the defaults, WTB reserves all rights and remedies available to it under the terms of Loan -0279 and may immediately implement those rights and remedies.

Please let me know if you have any questions.

Best regards,

TREVOR R. PINCOCK
TRP:trp

cc:     Crane Bergdahl
        6119 Burden Blvd., Ste. A
        PO Box 2755
        Pasco, WA 99302

01942483



RECEIVED

MAR 2 9 2021

SUSSMAN SHANK LLP